**The below described is SIGNED.**

**Dated: March 10, 2010** _____
  **WILLIAM T. THURMAN**
  **U.S. Bankruptcy Chief Judge**



_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

In re:

**Roger Scott Bryner,**

Debtor.

Bankruptcy Number 08-26804

Chapter 13

**MEMORANDUM DECISION ON MOTION TO RECONSIDER CLAIM 14**

The matter before the Court is Svetlana Bryner's Motion to Reconsider Order Allowing and Approving Payment of Claim 14 ("Motion to Reconsider") pursuant to Federal Rules of Bankruptcy Procedure 3008.  She seeks reconsideration and vacation of the Order Approving Stipulation dated August 11, 2009 ("Challenged Order") which provides that the Chapter 13 Trustee pay "claim 14-3 in the amount of $6,745 on a pro rata basis based on the Trustee's receipt of 36 payments in the amount of $75 for a total contribution to the plan of $2,700."

At the hearing on the Motion to Reconsider, appearances were made by Svetlana Bryner ("Ms. Bryner"), Roger Scott Bryner ("Debtor"), Chapter 13 Trustee, Kevin R. Anderson ("Chapter 13 Trustee"), and Lou Gehrig Harris, representing the Alexander and Andrew Bryner Irrevocable Trust ("Trust").  Both Ms. Bryner and the Debtor appeared pro se. The Court received evidence, heard arguments from all presenting parties and reviewed all pleadings and papers submitted and conducted research on its own regarding these issues.  In addition, this

Court takes judicial notice of the Debtor's entire bankruptcy case including pleadings and other submissions on file.[1]  Based on the same and good cause appearing, the Court determines that notice was appropriate to consider the Motion to Reconsider and that jurisdiction and venue are proper in this Court.  For the reasons stated hereafter, the Court will grant the Motion to Reconsider.[2]

**BACKGROUND**

This Court will go into the history of the case as it is necessary to understand the nature of the proceedings in regards to the matter that was heard.  This is a chapter 13 case with a confirmed plan.  There are still some outstanding issues regarding claims that need to be determined to assist the Chapter 13 Trustee in administering the plan.  This matter involves such claims.

The Debtor and Ms. Bryner have been involved in a domestic dispute regarding their two minor children since 2004 in the Domestic Court.[3]  At times, their dispute has been very acrimonious[4] which has continued before this Court.  The Challenged Order relates to an initial claim filed on February 2, 2009 by Steven Fritts ("Fritts"), as Trustee for the Trust in the amount

---

[1]This exercise of judicial notice is appropriate under <u>CA 79-3511 St. Louis Baptist Temple, Inc.</u>, 605 F.2d 1169 (10th Cir. 1979) which provides a court may sua sponte take judicial notice of its own records, files and facts which are part of its public records as well as notice of proceedings in other courts if those proceedings have a direct relations to matters at issue.

[2]The Memorandum Decision shall constitute the Court's findings and conclusions as required by Bankruptcy Rule 7052.

[3]The Third District Court for the County of Salt Lake, State of Utah, case #044904183.

[4]Attached to Ms. Bryner's claim 17-2 is a copy of the parties' Final Order of Custody of which the Court takes judicial notice further indicating the acrimonious relationship.

of $4,745 and filed as a domestic support obligation ("DSO")[5] (claim 14-1). On February 17, 2009, Fritts filed an amended claim for the Trust for $7,745 and referred to the original claim 14 filed on February 2, 2009 and again checked the box on the claim form for a DSO (claim 14-2).

On February 17, 2009, the Debtor filed an Objection to Claim #14 (docket 97) stating: "Debtor does not dispute the existence of a $4,745 priority claim" but disputes the calculation by the Trust for any amount over the $4,745. The Debtor further stated in his Objection to Claim 14 that "Either this court, or the underlying state court, needs to determine [what date to begin the calculation] is." That same day, the Debtor also filed a Motion to Give Claim 14 Priority (docket 107) stating:

> This priority is based upon the ruling of the state court that this money is "that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit" pursuant to 11 USC 523(a)(15).

The Debtor's Affidavit in Support of Motion to Give Claim 14 Priority (docket 119) states:

> 6) In a separate court action to establish priority for these funds as they are "in the nature of child support" Judge Hanson entered the order attached to 14-1, and I recognize that document as a true and correct copy of the most recent order of the court with respect to the trust.

Also filed on February 17, 2009 by the Debtor was a Stipulation in Support of Motion to Give Claim 14 Priority (docket 108) wherein the Debtor and Fritts, as Trustee for the Trust, stipulate:

> [T]here is no disagreement between them that at least $4,745 of the claim of the creditor is legitimate, a priority claim under federal law as it is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit" pursuant to 11 USC 523(a)(15), and thus should have priority over everything but taxes.

---

[5] DSOs must be paid in full in chapter 13 and are given the highest priority pursuant to 11 U.S.C. § 507(a)(1).

3

As a result of the submissions filed on February 17, 2009, this Court entered an Order Remanding Sole Financial Issue of Trust Amounts Owed Pre-Petition to the State Court (docket 163).

On April 17, 2009, Fritts, as Trustee for the Trust, filed an amended claim (claim 14-3) which provided that the claim was $6,745 and was a DSO.  Attached to 14-3 is a transcript from Judge Royal Hansen of the Domestic Court dated October 9, 2008 which in relevant part states:

> Upon reviewing the March 17, 2008 order referred to above, the Court found the Order states that the Defendant [the context of this suggests this refers to the Debtor herein] is to discharge this part of his support obligation by the amount of $500 per month per child in the college fund...Accordingly the Court...ordered in case number 044904183 a custody case involving the Defendant's two minor children, that Defendant [Debtor] pay $500 per month per child into the college fund. [Parenthesis added][6]

Also attached to claim 14-3 is a Minute Entry from Commissioner Patrick Casey from the Domestic Court dated April 2, 2009, stating the balance due towards the college funds was $6,745 as of the date of the bankruptcy petition.  On April 17, 2009, the Debtor withdrew his objection to the claim stating:

> [B]ased upon the fact that the claim has priority without an order of the court, and as a matter of law the onus is actually on the objecting party to challenge the status of the priority, thus not my problem.

The Chapter 13 Trustee then filed the Motion to Pay – Determination of Allowance and Payment of Claims 14 & 17 ("Motion to Pay") (docket 218) on May 12, 2009.  The Debtor filed a Partial Joinder in the Chapter 13 Trustee's Motion (docket 234) stating:

> Debtor Roger Bryner joins partially in the motion for relief asked for by the trustee's motion at docket #218 served upon him on May 12th 2009 fully as it

---

[6]This was memorialized into an order from the Domestic Court dated October 9, 2008 submitted as exhibit 2 to the Debtor's Verified Reply dated February 26, 2010.

4

relates to the prayer for relief at page 5 paragraphs 1[7] and 2...

Fritts, as Trustee of the Trust, also filed a Partial Joinder in the Chapter 13 Trustee's Motion (docket 235) stating he joins with regards to payment of claim 14 only.  Ms. Bryner also filed a response to the Chapter 13 Trustee's Motion to Pay and requested this court abstain from ruling on the issue (docket 232).  The hearing on the Motion to Pay was set for August 11, 2009 wherein the Challenged Order was entered.  Ms. Bryner timely filed a Motion for Reconsideration on September 10, 2009.  Due to various delays and continuances, the hearing on the Motion to Reconsider was not held until March 1, 2010.

The Debtor challenged Ms. Bryner's standing to file the current Motion to Reconsider alleging she is not a creditor, is not involved in the Trust and is not an attorney and therefore cannot represent her children because only an attorney may represent the children in court. To understand the Debtor's and Ms. Bryner's positions, another claim must be reviewed.

The Debtor filed a claim for Ms. Bryner on March 6, 2009 in the amount of $1,031.30 (claim 17-1) as an unsecured priority claim.  Attached to the claim were emails between himself and Ms. Bryner referring to claims for medical insurance, medical and dental costs and the college fund.   On March 16, 2009, Ms. Bryner filed an amended claim for $23,000 as a DSO which included both pre-petition medical insurance and the obligation for the children's college fund and attached the Final Order of Custody.  She checked the box on the form indicating it amends a previously filed claim, but did not indicate which claim it amended.  The Clerk of Court office staff then docketed Ms. Bryner's claim as amending claim 17-1 and assigned the amended claim number 17-2. On March 20, 2009, the Debtor filed an amended claim (claim 17-

---

[7]Paragraph 1 provides that Claim 14-3 be allowed as priority claim in the amount of $6,745.

5

3) which listed the amount at $1,031.30 and stated that it replaced claim 17-2, and listed it as an unsecured priority claim.  On March 23, 2009, the Debtor filed another amendment (claim 17-4) for the same amount, $1031.30,  as a priority unsecured claim with a memorandum in support which included an email from himself to Ms. Bryner dated March 17, 2009 stating "[b]asically, your 'amended claim' should actually amend 14...."  Ms. Bryner testified and argued at the March 1, 2010 hearing that she filed the amended claim, dated March 16, 2009, to amend claim 14, but she did not put a claim number indicating what claim it was amending.  The attachments to Claim 17-2, Ms. Bryner's credible testimony and representations indicating the debt on her amended claim 17-2 was for both medical insurance and the college fund and the Debtor's acknowledgment in his March 17, 2009 email all indicate Ms. Bryner's intent to include the college fund debt in some form of claim.  The Court entered an order on September 18, 2009 fixing claim 17 at zero which was based on Ms. Bryner's representations on August 27, 2009.[8]

**STANDING**

Rule 3008 does not have restrictive language as to who may file a motion to reconsider a claim and instead broadly states "a party in interest."  The party in interest designation has been extended to a creditor of a debtor which was not involved in the filing of other creditor claims.[9] Elsewhere a chapter 11 partnership debtor-in-possession stipulated with a creditor to pay in full that claim; later, that claim was allowed to be reconsidered upon motion of a general partner of the debtor.[10]  Although these cases are not from this circuit, they are persuasive.

---

[8]It is clear from the evidence and argument that Ms. Bryner was referring to the insurance portion being zeron, and not the college fund.

[9]In re Flagstaff Foodservice Corp., 32 B.R. 820 (Bankr S.D.N.Y. 1983).

[10]In re Delafield Development, 54 B.R. 442 (Bankr. E.D. Wis. 1985).

Ms. Bryner, the mother of the children who will utilize the college fund to pay for their college education, is in a similar position as the general partner. She may have to pay any college expenses that are not paid out of the college fund.[11] Accordingly, Ms. Bryner, at a minimum is a party in interest and has standing to bring the Motion to Reconsider. In addition, the Court finds that Ms. Bryner's amendment of Claim 17, which included reference to the college fund, gives Ms. Bryner standing for Claim 14 as she included both debts in her claim. She made a mistake in not separating the claims into Claim 14 and Claim 17 as the Debtor pointed out in his email of March 17, 2009 attached to his amendment to claim 17-4 above mentioned. Alternatively, the Clerk of Court staff of the Clerk's office incorrectly determined that her claim amended claim 17 instead of 14.

**EXCUSABLE NEGLECT AND SURPRISE**

There is no standard articulated for determining whether a claim should be reconsidered under Rule 3008. However, the Court finds Rule 9024 helpful and will look to the standard found in this Rule as a guide to determine whether reconsideration of Claim 14 may occur. Rule 9024 incorporates Federal Rule of Civil Procedure 60 and allows the Court to grant relief from an order on grounds of "mistake, inadvertence, surprise, or excusable neglect." Relief may be

---

[11]Paragraph 3 of the Final Order of Custody addressed in footnote 3 above provides in part: "...[the Debtor] is ordered to pay $500 per month per child into the children's fund until each child graduates from high school..." The Court cannot find an order from the Domestic Court specifically authorizing the creation of the Trust or who was authorized by the court to be the Trustee. However, there are references to a trust in some of the exhibits submitted by the Debtor at the March 1, 2010 hearing. In Ms. Bryner's Motion to Reconsider, she raised questions regarding the creation of the Trust and the authority of the trustee, alleging he is a close associate of the Debtor. It is unclear if the Domestic Court has specifically ruled on this matter. For the purpose of this ruling, and in addition to the other findings of the Court, the Court finds Ms. Bryner as the mother of the minor children who are to receive the benefits of the college fund, has standing to assert rights for them here.

7

afforded on the basis of mistake when a party has made a reasonable litigation mistake.[12] Relief may be afforded on the basis of surprise when a judgment or order is taken against the parties' understanding or agreement.[13] Further, by analogy, even inadvertent failure to file a proof of claim by the bar date can constitute excusable neglect suggesting some liberality is allowed in interpreting the effect of filing proofs of claims.[14] The U.S. Supreme Court's statement is helpful here:

> Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under Rule 60(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[15]

Here, Ms. Bryner has raised due process concerns over the actions that occurred at the August 11, 2009 hearing based emails between herself, the Debtor and the Chapter 13 Trustee which stated the hearing would be continued until August 27, 2009. Ms. Bryner had filed a timely response to the Chapter 13 Trustee's motion that was set for the August 11, 2009 hearing. Further, an email initiated by the Debtor on July 13, 2009 to the Chapter 13 Trustee and Ms. Bryner stated:

> This email is to confirm our joint agreement, between [Ms. Bryner], Myself, and Mr. Anderson, to move the hearings set for this Thursday and early August to after August 26th 2009. Please respond to all to confirm.

The Chapter 13 Trustee responded that he would appear at the August 11, 2009 hearing and request the continuance at that time to limit his notice requirements. At the March 1, 2010

---

[12] Yapp v. Excel Corp. 186 F.3d 1222 (10th Cir 1999).

[13] Thompson v. American Home Assurance Co., 95 F.3d 429 (6th Cir. 1996).

[14] Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993).

[15] Id at 381.

8

hearing, Ms. Bryner asserted that she relied on the Chapter 13 Trustee's representation that the hearing would be continued and did not attend the August 11, 2009 hearing because she was out of town and did not file a motion to continue the hearing prior thereto.

The Motion to Pay hearing was held on August 11, 2009 despite the agreement set forth in the email among the parties to continue the hearing. The result of this hearing was the Challenged Order stating that Claim 14 would accept a pro rata distribution from the funds paid under the chapter 13 from the Chapter 13 Trustee. It appears that the net effect of this order will be that instead of the $6,745 claim fixed by Commissioner Casey with the Domestic Court in April 2009, being paid in full as a DSO through the Debtor's plan, Claim 14 was turned into a non-priority claim[16] to be paid pro rata out of a total pool of approximately $3,000 as payments under the plan.[17] The hearing was held despite the absence of Ms. Bryner and despite the request of the Chapter 13 Trustee to continue the hearing. A visiting judge[18] was sitting for the

---

[16]The Chapter 13 Trustee's handwritten amendment to the stipulation at the August 11, 2009 hearing included the sentence "The balance of claim 14-3 shall be paid after the completion of the plan." The Debtor objected to that language stating he thinks the claim is dischargeable despite his previous filings stating differently; the Chapter 13 Trustee stated he was not in a position to determine dischargeability and had no problem with striking the sentence. The Court then commented that it was not there to determine the dischargeability of the debt as that would be a state court issue. This part of the Chapter 13 Trustee's amendment was then stricken.

[17]The plan provides that any DSO must be paid in full. Often times claims are not fixed and finally determined at the date that a chapter 13 plan is confirmed. Additional time is frequently needed to finally determine all claims. Once they are, the plan may need amending to provide for all claims, or alternatively, if claims are larger than originally projected, additional time may be needed to receive all payments and complete the plan.

[18]Occasionally, this Court asks other bankruptcy judges from this circuit to sit if the Court has a conflict in scheduling. This practice is very helpful to keep matters moving along and not delayed waiting for the Court to hold a hearing. The caseload in this district is extremely heavy and the assistance of visiting judges is greatly appreciated to avoid delays in obtaining hearing dates. It is uncertain whether the Court would have done what was done on August 11, 2009, and this is only mentioned to give additional context and by no means is it intended to criticize

Court on August 11, 2009 due to a conflict of scheduling of the Court. The judge elected to issue the Challenged Order upon a stipulation among the Chapter 13 Trustee, the Debtor and Fritts, as Trustee of the Trust, regarding payment and classification of Claim 14. The Challenged Order stated a position that was inconsistent with the positions the Debtor and Fritts had previously stipulated to and referenced in earlier pleadings.[19] The Court is concerned that judge was not completely informed as to all the pleadings and other court papers filed and agreed to prior to the hearing. This is particularly significant when the position in the Challenged Order was completely different than previously asserted by the Debtor and Fritts and possibly in contradiction to the orders from the Domestic Court issued by Commissioner Casey and Judge Hansen (see Page 4 supra).

This Court finds that Ms. Bryner reasonably relied upon the emails that the hearing would be continued. This is a reasonable litigation mistake from which Ms. Bryner should be afforded relief. In addition, the Challenged Order was a surprise to Ms. Bryner as it was taken against her understanding or agreement from the emails which indicated the hearing would be continued. Further, the Challenged Order took a completely different stance on the classification of the Trust than both the Debtor and Fritts, as Trustee of the Trust, had previously

---

the visiting judge or the practice of having visiting judges assist this Court..

[19] See above: Debtor's Objection to Claim 14 (docket 97); Debtor's Motion to Give Claim 14 Priority (docket 107); Debtor's Stipulation in Support of Motion to Give Claim 14 Priority (docket 108); Debtor's Notice of Withdrawal of Objection (docket 210); Debtor's Partial Joinder in Trustee's Motion (docket 234); and Fritts Partial Joinder in Trustee's Motion (docket 235). See also Fritts' Reply to Objection to Claim (docket 143) which states "There is no dispute that while this debt is in the nature of child support, it is not child support." All of these suggest that the Debtor had accepted the Trust claim was $6,745 as a priority DSO.

asserted.[20] In addition, the Court notes that the Challenged Order was a stipulation between the Debtor, Fritts for the Trust and the Chapter 13 Trustee. However, no attorney represented the Trust at the August 11, 2009 hearing or anytime prior. Consistent with to Local Rule 9011-2, requiring attorney appearance to represent any non-natural entities and the Debtor's argument on March 1, 2010 that only an attorney can represent the Trust at a contested matter hearing, Fritts could not represent the Trust at the August11, 2009 hearing.[21] Accordingly, Ms. Bryner has not only shown excusable neglect and surprise, but also that she may have a meritorious position with respect to Claim 14 and has otherwise shown cause to grant the Motion to Reconsider. The Court will reconsider Claim 14 and all parties position at a future date.

**PROCEDURE FOR FUTURE CONSIDERATION OF CLAIM 14**

This Court previously granted Ms. Bryner relief from stay to have the issue on whether the college fund claim is a DSO be determined by the Domestic Court in an order dated October 7, 2009 and clarified by order dated December 7, 2009. In addition, this Court also entered an order dated March 3, 2009 entitled, "Order Remanding Sole Financial Issue of Trust Amounts Owed pre-Petition To the State Court" which "remands the sole issue of clarifying what the total pre-petition payments to the Trust should have been to the Court in case #044904183 in the

---

[20]Id.

[21]A trust may file proofs of claim without an attorney. However, appearing in Court and signing pleadings and a stipulation in a contested matter is something that is reserved for attorneys where the claimant is not an individual. Mr. Lou Gehrig Harris has entered an appearance for the Trust as of September 29, 2009 and the Court looks to him for authority to act for and on behalf the Trust consistent with Local Rule 9010-1. At times, Fritts has appeared and in deference to him appearing and receiving his input, this Court has allowed him to comment in open court based on the discretion afforded by Local Rule 9010-1(c). see also 28 U.S.C. § 1654 and In re Shattuck, 411 B.R. 378 (10th Cir. BAP 2009). 28 U.S.C. § 1654 does not permit artificial entities, such as...trusts or estates, to prosecute or defend in a federal court except through an attorney that is licensed and admitted to practice in that particular court.

11

Third District Court." It appears this has been complied with as evidenced by the Exhibit B to Claim 14-3 (the Commissioner Casey order from the District Court). Accordingly, consistent with the previous orders, this Court will defer to the Domestic Court for a determination of how the college fund should be administered, whether it is in the nature of support and to whom it is owed. Following the Domestic Court's ruling on these matters, this Court requires the parties to renew the matter before the Court to determine the allowance and classification of Claim 14, at which time the Court will hear arguments by the parties.

It is noted that the Debtor has appealed both the September 21, 2009 Order Granting the Motion to Pay ("Pay Order") which relates to claim 14 and 17 and the October 7, 2009 Relief from Stay Order ("Stay Order") to the Bankruptcy Appellate Panel for the Tenth Circuit (the "BAP")(appeals 09-0058 and 09-0059 respectively). Following the dismissal by the BAP on the Pay Order appeal (09-0058), the Debtor appealed that BAP dismissal order to the Tenth Circuit Court of Appeals (10-4024), where it is pending at this time. The BAP entered another order ("BAP Order") which defers and suspends the Stay Order appeal (09-0059) pending a hearing on the current Motion to Reconsider. Ms. Bryner sought to present this matter and others to the Domestic Court following the granting of her motion for relief in the Stay Order in what she called an "Order to Show Cause." Shortly before the hearing on the Order to Show Cause in Domestic Court, the Debtor removed that proceeding to this Court. This Court remanded and abstained in that proceeding and the Debtor has appealed that remand to the United States District Court ("District Court Appeal"). No ruling has been made on the District Court Appeal at this time.

Though this Court defers to the Domestic Court for a determination on the college fund, it is unclear exactly when that might be. This Court's present ruling is in part a response to

being as prompt as possible to address the BAP Order. A separate order has also been entered based on this Memorandum Decision.

_____End of Document_____



___ooo0ooo___

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Roger Scott Bryner
1037 Watercress Lane, #2X
Midvale, UT 84047

Svetlana Bryner
6751 South 2300 East
Salt Lake City, UT 84121

Lou G. Harris
Alexander and Andrew Bryner Irrevocable Trust
111 East 5600 South, Ste 322
Murray Utah, 84107

Alexander and Andrew Bryner Irrevocable Trust
Trustee: Steve Fritts
PO Box 271279
Salt Lake City, UT 84127

Chapter 13 Trustee, Kevin Anderson
405 South Main Street, Suite 600
Salt Lake City, UT 84111